# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRUCE PULCHALSKI,** | : | **CIVIL NO. 15-CV-1365** |
| Plaintiff | : | **(Judge Kane)** |
| v. | : | **(Magistrate Judge Carlson)** |
| **FRANKLIN COUNTY,** | : | |
| Defendant | : | |

## MEMORANDUM ORDER

### I.   Factual Background

This is an employment discrimination action.  The plaintiff initiated this lawsuit by filing a complaint against Franklin County on June 13, 2015.  (Doc. 1.) In this complaint the plaintiff alleges that he was formerly employed at the Franklin County Jail, and he claims that other employees at the jail discriminated against him in violation of the Americans with Disabilities Act.

The parties are now embroiled in a discovery dispute, with the plaintiff alleging that defendants have failed to provide required discovery in response to the interrogatories served upon them, and the defendants insisting that the plaintiff has issued excessive and improper discovery demands.  (Docs. 35 and 36.) Specifically, the defendant contends that the plaintiff has exceeded the 25 interrogatory limit set by Rule 33 by filing a set of interrogatories which contain numerous independent sub-parts, and then further compounding the compound

nature of the interrogatories by sub-dividing many of these sub-parts into multiple sub-subsections.

An examination of the interrogatories reveals that there is merit to the defendant's concerns. While the plaintiff has listed only 13 interrogatories, the 13 interrogatories are broadly grouped around general subject matter headings. Of these 13 interrogatories, 10 are then divided into numerous sub-parts which pose discrete questions concerning each of the broad subject matter headings. Thus, when the total number of sub-parts set forth in these 13 interrogatories are separately counted, the total number of interrogatories and sub-parts approaches some 39 queries. Furthermore, many of these interrogatories, or interrogatory sub-part, in turn, are divided into numerous subsections. Indeed, by our count there may be as many as 26 sub-sections contained within these interrogatories, or interrogatory sub-parts. Thus, the total number of separate, discrete factual inquiries contained within the body of these interrogatories may be as many as 65 independent inquiries. Viewed in this light, the interrogatories are more akin to a deposition on written questions.

Following an initial conference with counsel, and in order to address these issues, we ordered that the parties' submissions on this discovery dispute be deemed to be a motion to compel, (Doc. 35.) and motion for protective order (Doc. 36.) respectively. We then instructed the parties to initially brief the question of

whether the discovery demands in this matter are excessive in that they violate the discovery limitations prescribed by the Federal Rules of Civil Procedure. The parties have complied with this direction, fully briefing their positions on this matter. Accordingly, these motions are ripe for resolution.

For the reasons set forth below, we will grant the defendant's motion for protective order, and will not require the defendant to respond to these excessive interrogatories beyond the responses which the defendant initially provided. However, recognizing that our after-the-fact assessment of whether the manner in which these interrogatories were structured violated the limitations prescribed by the Federal Rules of Civil Procedure may hobble the plaintiff in preparing his case, we will allow the plaintiff leave to propound 12 additional, narrowly tailored interrogatories.

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P., Rule 26(b)(1), which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, and whether

compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained

5

through discovery reaches nonprivileged matter that is relevant to any party's claim or defense. Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

The Federal Rules of Civil Procedure also set numerical limits on the number of discovery demands which a party may propound. In this regard, Rule 33(a)(1) of the Federal Rules of Civil Procedure, which governs interrogatories to parties, expressly provides that: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts*." Fed. R. Civ. P. Rule 33(a)(1)(emphasis added). Over the past years, much ink has been spilled addressing the question of how interrogatory sections and subparts should be counted. In this regard, the positions of the parties are proponents or opponents of particular interrogatories often color their views regarding whether an interrogatory consists of a single, albeit extended, question, or multiple subparts each of which is independently counted in determining whether Rule 33's limits have been met or exceeded. On this score, as

the courts have observed: "Identifying a 'discrete subpart' has proven difficult." Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004). In addressing this question: "[T]he courts have . . . attempted to formulate more conceptual approaches, asking whether one question is subsumed and related to another or whether each question can stand alone and be answered irrespective of the answer to the others. Kendall v. GES Exposition Services, 174 F.R.D. 684 (D.Nev.1997). But, . . . , this is anything but a bright-line test. Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D.Cal.1998)." Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004).

In addressing this question, we begin as many other courts have in the past, by considering the Advisory Committee Notes to Rule 33 which explains that:

> Interrogatories often contain subparts. Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic. The Advisory Committee addressed this issue and provided some guidance as to when subparts should and should not count as separate interrogatories:
>
> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or

>stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Advisory Committee Note, 146 F.R.D. 401, 675–676 (Fed.1993.).

Nyfield v. Virgin Islands Tel. Corp., 200 F.R.D. 246, 247 (D.V.I. 2001).

Adopting this approach, we note that we are urged to "use rules of reasonability and fairness in compressing subparts to count against [Rule 33's 25 interrogatory] limit." Id. In this regard, "the best test of whether questions with[in] a single interrogatory are subsumed or related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone?" Id. Put another way, "[a] subpart is discrete and regarded as a separate interrogatory when it is logically or factually independent of the question posed by the basic interrogatory. See Safeco of Am. v. Rawstron, 181 F.R.D. 441, 444–45 (C.D.Cal.1998); Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684, 685–87 (D.Nev.1997)." New Colt Holding Corp. v. RJG Holdings of Florida, Inc., No. CIV. 3:02CV173 (PCD), 2003 WL 22305141, at *1 (D. Conn. Feb. 6, 2003). Thus, an evacuation of whether various queries constitute separate interrogatories for purposes of

assessing the limits set by Rule 33 often entails, " including subparts and sub-subparts that are often logically and/or factually independent of the question posed by the basic interrogatory." Knit With v. Knitting Fever, Inc., No. CV 08-4221, 2010 WL 11474937, at *1 (E.D. Pa. Jan. 22, 2010).

Applying this guidance, and mindful of the fact that "this is anything but a bright-line test," Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004), we find that the interrogatories propounded by the plaintiff exceed the 25 interrogatory limit set by Rule 33(a)(1). In particular, we note that a number of these interrogatories are framed in multiple sub-parts asking a series of discrete inquiries about multiple events, spanning several years. See Interrogatories 3, 4 and 5. Other interrogatories pose a series of discrete and specific questions regarding Pulchaski's past pay, projected future earnings, commissions, bonuses and retirement benefits. Interrogatory 6. Still other interrogatories pose multiple sub-part inquiries into what are potentially a host of hiring, consultant and independent contractor decisions made at the prison in the months preceding and following Pulchaski's termination. Interrogatory 7. Furthermore, other interrogatories are framed in multiple subparts and seek numerous discrete categories of information concerning prison staff disciplinary actions ranging over a 5 year period. Interrogatory 8. While these interrogatories may share certain broad thematic thrusts, we find that the questions nestled within each of these

interrogatories are logically or factually independent of one another, and, therefore, should count as independent interrogatories under Rule 33. With the interrogatories construed in this way, we believe that the defendant has properly objected to the interrogatories, as they are framed, and will sustain their objections to those interrogatories.

We are, however, cognizant of the fact that the analytical approach taken by courts in this field "is anything but a bright-line test." Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004) Therefore, in framing an appropriate resolution to this particular discovery dispute, we must set a course which avoids unfair prejudice either to the defendant, who has faced what we find to be excessive inquiries, or the plaintiff, who did not have the benefit of this ruling when drafting interrogatories, and, therefore, might have taken a more focused approach to these interrogatories had he known that the interrogatories which he had numbered at 13, might later be construed to include as many as 65 separate inquiries. In the past, when courts have been presented with similar dilemmas, one solution has been to sustain objections to the interrogatories, as posed, but grant the party propounding what are later found to be prolix interrogatories leave to propound some limited number of additional discrete and specific interrogatories. See Nyfield v. Virgin Islands Tel. Corp., 200 F.R.D. 246, 247 (D.V.I. 2001).

This is the path we will follow in the instant case. We will grant the defendant's motion for protective order, and direct that the defendant need not further respond to the extant interrogatories. We will deny the plaintiff's motion to compel, but will grant the plaintiff leave to propound 12 additional discrete and specific interrogatories which comply with the provisions of Rule 33.[1]

An appropriate order follows.

### III. <u>Order</u>

IT IS ORDERED as follows:

1. The defendant's motion for protective order,(Doc. 36.), IS GRANTED to the extent that the defendant need not further respond to the extant interrogatories.

2. The plaintiff's motion to compel, (Doc. 35.), is DENIED but we will grant the plaintiff leave to propound 12 additional discrete and specific interrogatories which comply with the provisions of Rule. The plaintiff shall tender these interrogatories to the defendant within 21 days, and the parties shall then comply with the provisions of Rule 33 in responding to, or objecting to, specific interrogatories. Given

---

[1] By sustaining the defendant's objection to the 13 interrogatories posed by the plaintiff, finding that the interrogatories were in some instances excessive compound questions, but granting the plaintiff leave to submit 12 additional narrowly tailored interrogatories we also pay fidelity to Rule 33(a)(1)'s admonition that the total number of interrogatories propounded by a party may not exceed 25.

this ruling, the parties' arguments regarding substantive objections to the prior interrogatories are deemed moot, but the Court stands ready to address any substantive objections lodged by the parties with respect to any of the 12 supplemental interrogatories authorized by this order.

So ordered this 5th day of January, 2017.

>*/s/ Martin C. Carlson*
>Martin C. Carlson
>United States Magistrate Judge